Patricia BOWDEN et al., Plaintiffs,
Appellees,

v.

Dennis McKENNA et al., Defendants,
Appellants.

No. 78–1177.

United States Court of Appeals,
First Circuit.

Argued March 8, 1979.

Decided May 9, 1979.

John L. Keefe, Boston, Mass., with whom Joseph W. Glannon, Arlington, Mass., was on brief, for defendants, appellants.

Lawrence F. O'Donnell, with whom Michael J. O'Donnell, and O'Donnell, O'Donnell & O'Donnell, Boston, Mass., were on brief, for plaintiffs, appellees.

Before ALDRICH and CAMPBELL, Circuit Judges, GIGNOUX, District Judge.[*]

ALDRICH, Senior Circuit Judge.

This 42 U.S.C. § 1983 action[1] for the shooting of a robbery suspect by two policemen—either in cold blood, or in self-defense—is unusual, not merely on its facts, but for the subtle, and ultimately not so subtle, prejudicial way in which it was presented by the plaintiff;[2] for the amount of time devoted to evidence that was either irrelevant or prejudicial, and for the exclusion of proper defense evidence, due to a misunderstanding by the court, which heightened the above. None of this means that, on a proper view of the case, a finding for the plaintiff might not be warranted; all of it means that the finding was reached without any such view.

Basically, the case presented a simple issue. At about 2:30 P.M. on January 29, 1975, a small grocery store near Central Square, Cambridge, was robbed by two black men. A description, including that of the getaway car, was given by the victims to the Cambridge police, who sent it out. As a result, at about 6:30 P.M., defendants, two Boston policemen, approached a car suspected of meeting the description in the Mission Hill section of Roxbury in order to interview the driver, Bowden, and thereafter shot and killed him. According to plaintiff, the shooting was immediate and unprovoked. According to defendants, it was because Bowden struck one of them with his car and attempted to kill him.

Much of the early part of the trial was devoted to how the Cambridge police, and then the Boston police, handled the reported registration of the getaway car, investigated whether it had been listed as stolen, and made and kept records. A slight inaccuracy at one point with respect to the registration might have borne on the issue whether Bowden's was the correct car, but none of it detracted from defendants' right to approach him as a suspect, or bore on any other issue.[3] Next, and in this instance bearing solely on the issue whether Bowden was one of the robbers, plaintiff introduced evidence from the Boston City Hospital, where he had been employed, that he was seen there "about 2:30," and that he punched out at 3:17 P.M. While the important 2:30 evidence[4] was later impeached, this left a presentable claim that Bowden had not, in fact, been involved in the robbery.

Plaintiff then offered testimony which would have warranted (although not necessarily have compelled, even if believed) a finding that defendants approached Bowden's car and, without ado, jointly shot him, though he was unarmed, through the windows from both sides of the car. No evidence was offered to show why defendants would have done this, not even anything about the robbery itself, which, although committed with a handgun, was a small affair with no one hurt, to have excited such animosity.[5]

[*] Sitting by designation.

1. A second count, based on the Massachusetts wrongful death act, presents no additional questions.

2. Strictly, plaintiffs, the widow and two minor children.

3. The reporting, and a companion even more irrelevant matter, whether defendants' car was coded # 841 or 841A, occupied many pages of transcript and could well, as plaintiff's argument suggests, have confused the jury.

4. We may take judicial notice that one could easily have driven from Central Square after the robbery in time to check out at 3:17.

5. Plaintiff, during final argument, harped upon the fact that Bowden was black, which may have aroused the jury's sympathy, but standing alone, seems a weak reed to support a deliberate killing which, on any basis, it admittedly was. At the same time, not once, in 26 pages

As against plaintiff's evidence, defendants testified to one of them ordering Bowden to get out of the car, to which he responded by driving against him, knocking him down, and then backing up and endeavoring to run over him, ("cut me in two"); that Bowden then tried to shoot him, and that they both shot Bowden. Again, there was no evidence to explain why Bowden, in turn, should have engaged in such hostile conduct.[6] Defendants, however, sought to introduce such evidence, namely, identification of Bowden as one of the robbers by the two storekeepers, but the court excluded it. This exclusion and its consequences produced this appeal.

In a lengthy give-and-take with counsel, the court ultimately rejected defendants' offer of proof in the form of pretrial depositions of the storekeepers, assigning a number of reasons: that the character of the decedent (of being violent) was sought to be shown by a single event; that "a collateral matter" must be shown by "clear and convincing evidence;" and that the evidence was overly prejudicial compared with its probative force, which the court, because of questioning its credibility, believed to be slight. This at once, in our opinion, understated the importance of the testimony, and overstated the prejudice. Indeed, as it turned out, the prejudice was the other way.

▮ In the first place, this was not a collateral matter. Here were two experienced policemen, instructed, as plaintiff was careful to bring out, to make arrests

and generally conduct themselves with the least amount of force, but jointly shooting to kill a man they wished to question allegedly simply because he refused to get out of his car. On its face it makes no sense.[7] Defendants sought to make sense by the testimony identifying him as one of the robbers. Not merely would this have suggested a violent disposition, a matter not normally considered collateral in self-defense cases, *United States v. Burks,* 1972, 152 U.S.App.D.C. 284, 286, 289, 470 F.2d 432, 434, 437; *see* C. McCormick, Evidence, § 192, at 460–61 (2d ed. 1972); more important, it would have shown that Bowden had a motive to resist the officers. Whether or not the evidence was "clear and convincing" was beside the point; it undoubtedly satisfied the applicable, less exacting test of relevancy under F.R.Evid. 401.[8] The fact that it also decided a prior crime did not render it inadmissible per se because of prejudice. F.R.Evid. 404(b); *see United States v. Stover,* 8 Cir., 1977, 565 F.2d 1010, 1013–14; *United States v. Haldeman,* 1976, 181 U.S.App.D.C. 254, 311–312, 559 F.2d 31, 88–89, *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250; *United States v. Egenberg,* 2 Cir., 1971, 441 F.2d 441, 443–44, *cert. denied,* 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546; *Reed v. United States,* 9 Cir., 1966, 364 F.2d 630, 633, *cert. denied,* 386 U.S. 918, 87 S.Ct. 873, 17 L.Ed.2d 789. Nor, were prejudice an issue, should the court have invaded the jury's function by assessing credibility. Weighing probative value against unfair prejudice under F.R.Evid. 403 [9] means probative value with respect to

of argument, did defendants pose this basic question to the jury. We are constrained to remark that this was but one of a number of such unaccountable omissions.

**6.** An interesting suggestion was made by the court at the bench that, in fact, Bowden, on whom no gun was found, did not shoot as alleged, but was shot by one defendant because he had tried to run over the other (if that were true) and that the other, in the dark, and close quarters, mistook who had fired.

**7.** Particularly so in this case, although, again, defendants failed to point it out in their argument, because defendants had in the back of

their car two newspaper reporters who were researching an article on police procedures. The last thing one would think defendants would want would be a report of a brutal, senseless killing.

**8.** 401. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**9.** 403. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

a material fact if the evidence is believed, not the degree the court finds it believable. *See* 22 C. Wright & K. Graham, Federal Practice & Procedure: Evidence, § 5214, at 265–66 (1978). Also, of course, this being a civil case, inapposite are due process standards of reliability governing the admissibility of eye-witness identifications in criminal prosecutions. *Compare, e.g., Manson v. Brathwaite,* 1977, 432 U.S. 98, 92 S.Ct. 2243, 53 L.Ed.2d 140; *Neil v. Biggers,* 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Simmons v. United States,* 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

■ Finally, even if it could be thought that Bowden's participation in the robbery was a collateral issue which a court, in its discretion, might conclude to foreclose, plaintiff had already introduced the subject and, short of striking that evidence, there could be no stopping. There was no point to the testimony that Bowden was seen at the City Hospital at the time of the robbery, and that he punched out three-quarters of an hour afterwards, except to show his innocence. In her brief, plaintiff argues, "This is simply not the case. The testimony of said witnesses was admissible for all purposes." No other purpose, however, is suggested. Nor was there any other purpose for the testimony that police, other than defendants, may have scrambled the getaway car's registration number. The matter of Bowden's innocence having been opened, defendants were plainly entitled to rebut.

Instead, plaintiff was given unrestricted license to argue her side to the jury. Beginning with the charge that defendants were seeking to place a "perjury frame . . . around James Bowden," plaintiff proceeded,

"So insofar as James Bowden is concerned, no one ever got on the stand and said he robbed them in Cambridge. Nobody ever got on that stand and said James Bowden robbed them."

Again,

"Can anyone go up in the jury room and say: I'm voting for [the defendants] . . . because James Bowden robbed the store

in Cambridge? He never did anything in his life."

Again,

"See, they can't and couldn't bring anyone in from Cambridge and say: He robbed me. They couldn't bring anyone in to say he had a criminal record. They couldn't bring anyone in here in any way, shape, or manner to defame him, so what do we do now? They were willful and wanton . . . ."

Finally, this mounted to a crescendo,

"There has been not one piece of evidence brought in by this big police force that James Bowden wasn't in the City Hospital. Nobody. Nobody got on that stand and said they're all full of bologna, he wasn't there, he was over in Cambridge holding me up. Stupid, stupid, and willful and wanton."

Actually, the guilt or innocence of Bowden had nothing to do with the case against these defendants, who had adequate cause to question him in any event, and should not have been before the jury at all, unless defendants raised it themselves as part of their defense. Plaintiff correctly points out that defendants did not object to her raising it, but since defendants expected to do so themselves, they might well have concluded that the order of proof was not worth contesting. But whether defendants were wise or not, in no circumstance, having succeeded in excluding the contrary evidence that Bowden was one of the robbers on the ground that it would be unduly prejudicial, could plaintiff turn around and make a broad, emotional appeal to the jury on the ground that he was innocent. A party cannot have it both ways.

■ Before leaving this matter we deal briefly with a paragraph in plaintiff's brief asserting that defendants "made utterly no objection nor did they take any exception to any rulings of the trial judge which they now claim to have been erroneous," hence there is nothing before us. We can only

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

think that counsel is willing to take a chance that we do not read the record. Fifty pages of side-bar discussion leading to the court's excluding the identification testimony (as if that discussion were not objection enough to save rights under F.R.Civ.P. 46), end with the court's remarks, "Your objections are noted." The record also shows extensive complaint, immediately after plaintiff's argument, to the quoted excerpts, particularly the last.

We may add that even if no objection had been made to the oral argument, plaintiff's making it of itself demonstrated the prejudicial effect on defendants of the exclusion of the testimony. So, too, did a post-verdict newspaper account of juror interviews that plaintiff saw fit to include in her brief, which, not because of its impropriety, but because of its content, we can only regard as a self-inflicted wound.

There must be a new trial.