**Mohammed ROSHAN, a/k/a Michael Roshan, Appellee,**

v.

**Mohammed Sabiri FARD, Appellant.**

**No. 82–1244.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 12, 1983.

Decided April 7, 1983.

Rehearing Denied May 6, 1983.

Edward L. Weiner, Fairfax, Va. (Kenneth R. Weiner, Weiner, Weiner & Weiner, P.C., Fairfax, Va., on brief), for appellant.

Christopher M. Hopkins, Fairfax, Va., for appellee.

Before WINTER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

This action arises out of an incident which occurred in a crowded bar on the night of July 4, 1981, in Tyson's Corner, Virginia. Federal jurisdiction is founded on diversity of citizenship under 28 U.S.C. § 1332(a)(2). At trial, the jury found Mohammed Sabiri Fard, a.k.a. Michael Burke (Burke), guilty of assault and battery against Mohammed Roshan, a.k.a. Michael Roshan (Roshan), and awarded damages of $25,000 to Roshan. Because we find that Burke was improperly prevented from presenting relevant, material evidence to the jury, we vacate the judgment below and remand the case for a new trial.

Although the general chronology of events on the night in question is clear, most of the factual predicates of the incident are hotly disputed by the parties. Testimony introduced at trial revealed that on the evening of July 4, 1981, both Burke and Roshan visited Maxim's Restaurant in Tyson's Corner, Virginia. At various times that evening, words were exchanged between the parties and one or both men had to be restrained. Eventually, the dispute between these two men erupted into a serious fight in the club's restroom, with both Burke and Roshan receiving knife wounds and other injuries. Police arrived on the scene shortly thereafter to find both men still on the premises. Roshan, the more seriously injured of the two, was hospitalized for six days, while Burke was apparently treated and released from a hospital on the morning of July 5. Beyond this bare outline of events, the evidence relative to the altercation was in sharp conflict.

Burke's version of the incident is roughly as follows: An electrical engineer who owns and operates a television repair shop, Burke had gone to Maxim's to discuss with the owner of the restaurant the possibility of opening a video store. Roshan entered the restaurant later that evening, and subsequently accosted Burke in the men's room, punching Burke in the face and causing his lip to bleed. When Burke attempted to leave Maxim's sometime after this incident, he noticed three men in a jeep parked outside. Fearful of bodily injury, Burke returned to the restaurant. As the evening wore on, Roshan again confronted Burke, uttering threats and curses. Finally, while once again in the men's room, Burke was assaulted by Roshan and two other men, with Roshan brandishing a knife. In the ensuing struggle, Burke managed to wrest the knife from Roshan and injure him before fleeing the restroom. While awaiting the arrival of police, Burke was attacked once more in the parking lot by the two men who had accompanied Roshan in the men's room. These men fled before police arrived on the scene. In essence, Burke presents a scenario in which Roshan and other men were the aggressors throughout the evening, and in which Roshan's injuries were inflicted by Burke in self-defense.

Roshan disputes virtually every element of Burke's story. According to Roshan, only words were exchanged during the first encounter in the bathroom, Burke subsequently harassed and threatened to kill Roshan at Roshan's table, it was Burke who later attacked Roshan in the bathroom with a knife, and no one accompanied Roshan during any of the skirmishes. As Roshan would have it, then, it was Burke who was the aggressor all evening long and who wielded the knife in the final encounter. The jury evidently found Roshan's witnesses to be more credible and believed his version of the night's events, as they awarded Roshan $15,000 compensatory damages and $10,000 punitive damages.

Burke raises but one issue on appeal. Immediately prior to the commencement of trial, counsel met with the trial judge in chambers to discuss an *in limine* ruling sought by Roshan. This discussion centered

around the prior relationship of Burke and Roshan with each other and with the United States Drug Enforcement Agency (DEA). It appears from evidence included in the record, but not presented to the jury, that Burke was an informant for the DEA, and that shortly before the incident in question Roshan had been convicted of drug charges on the basis of information supplied by Burke. Although there is no transcript of this discussion of Roshan's *in limine* motion, the substance of the court's ruling on this matter is apparent from an examination of an order entered subsequent to trial. The trial judge ruled that all evidence relating to the nature of the crime for which Roshan had been convicted was inadmissible as prejudicial under Fed.R.Evid. 609, and that all evidence of Burke's role as an informant for the DEA was likewise inadmissible. In the event that Roshan testified, however, Burke would be allowed to introduce evidence indicating that Roshan had been convicted of a crime, and to question Roshan concerning his belief that Burke had been responsible for his conviction. It is Burke's contention on appeal that the substantial exclusion of evidence relating to the relationship of Burke and Roshan prior to the fight precluded the jury from making a fair and proper determination of the issue before them.

## I.

As an initial matter, Burke contends that exclusion of the evidence in question under Fed.R.Evid. 609(a)(1) was improper in any event, since this rule speaks only to possible prejudice to a *de-*

*fendant* witness.[1] We agree with Burke on this point. First, the plain language of the rule indicates that the balancing test of 609(a)(1) is to be applied only in situations involving possible prejudice to the defendant. Second, the House Report to Rule 609 specifically states that the Conference Committee considered expanding the scope of the rule to include witnesses other than the defendant, and decided not to do so. *See* Fed.R.Evid. 609 conference committee notes, *reprinted in* 28 U.S.C.A. Federal Rules of Evidence at 286 (1975). Finally, we note that Fed.R.Evid. 609 is concerned solely with the use of evidence of criminal conviction as a means of attacking the credibility of a witness. 10 Moore's Federal Practice § 609.02, at VI–134 (2d ed. 1982). Where, as here, the evidence is proffered primarily to demonstrate motive and only incidentally to attack credibility, the evidence may properly be admitted under Fed. R.Evid. 404(b).[2] *See United States v. Haldeman,* 559 F.2d 31, 88–89 & n. 145 (D.C.Cir.1976); Fed.R.Evid. 609 judiciary committee notes, *reprinted in* 28 U.S.C.A. Federal Rules of Evidence at 285 (1975). Thus, Fed.R.Evid. 609(a)(1) is inapplicable to the facts of this case, and exclusion of the evidence in question under this rule was improper.

## II.

As Burke suggests on appeal, the question whether evidence of Roshan's prior criminal conviction and Burke's role therein should have been presented to the jury is properly analyzed under Fed.R.Evid. 403.[3]

1. Fed.R.Evid. 609 provides in pertinent part as follows:

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, . . . .

2. Fed.R.Evid. 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3. Fed.R.Evid. 403 provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

*See* 10 Moore's Federal Practice § 609.02, at VI–135 (2d ed. 1982). In analyzing the question at hand under Rule 403 we find considerable guidance in *Bowden v. McKenna,* 600 F.2d 282 (1 Cir.1979). In *Bowden,* a civil rights action was brought against two policemen by a robbery suspect's widow and minor children for the alleged shooting in cold blood of the suspect following the stop of his vehicle. The trial court excluded evidence that the victim was one of two suspects in the robbery of a grocery store in a neighboring community some four hours prior to the shooting. On the basis of the evidence before them, the jury found for the plaintiffs.

The First Circuit in *Bowden* vacated the judgment of the trial court and ordered a new trial. The Court concluded that evidence that the victim was a suspect in a robbery committed earlier on the day of the shooting was not a collateral matter, since the excluded testimony would have shown that the suspect had a motive to resist the officers and thus would have made sense out of the events in question. To quote liberally from the First Circuit's opinion:

As against plaintiff's evidence, defendants testified to one of them ordering Bowden to get out of the car, to which he responded by driving against him, knocking him down, and then backing up and endeavoring to run over him, ("cut me in two"); that Bowden then tried to shoot him, and that they both shot Bowden. *Again, there was no evidence to explain why Bowden, in turn, should have engaged in such hostile conduct.* Defendants, however, sought to introduce such evidence, namely, identification of Bowden as one of the robbers by the two storekeepers, but the court excluded it. This exclusion and its consequences produced this appeal.

\* \* \* \* \* \*

In the first place, this was not a collateral matter. Here were two experienced policemen, instructed, as plaintiff was careful to bring out, to make arrests and generally conduct themselves with the least amount of force, but jointly shooting to kill a man they wished to question allegedly simply because he refused to get out of his car. *On its face it makes no sense. Defendants sought to make sense by the testimony identifying him as one of the robbers.* Not merely would this have suggested a violent disposition, a matter not normally considered collateral in self-defense cases, *United States v. Burks,* 1972, 152 U.S.App.D.C. 284, 286, 289, 470 F.2d 432, 434, 437; *see* C. McCormick, Evidence, § 192, at 460–61 (2d ed. 1972); *more important, it would have shown that Bowden had a motive to resist the officers.*

600 F.2d at 284 (footnotes omitted, emphasis supplied).

Similarly, in the present case we find that evidence concerning Burke's alleged role in Roshan's conviction, and Roshan's knowledge or belief thereof, is central to an understanding of the events on the night in question as described by Burke. If true, evidence that Roshan knew or believed Burke to be responsible for his conviction would establish a strong motive [4] for Roshan to attack Burke and thus would render more credible Burke's account of the encounter in Maxim's. Given the crucial nature of the excluded evidence as it relates to Roshan's possible motive in the alleged attack on Burke, it cannot be said that the prejudice Roshan might experience as a result of admission of evidence of the nature of his conviction and Burke's role therein substantially outweighs the probative value of such evidence. Fed.R.Evid. 403. Accordingly, evidence that Roshan held Burke responsible for his conviction on serious drug charges should have been admitted at trial.

waste of time, or needless presentation of cumulative evidence.

**4.** Upon his conviction, Roshan was sentenced to 18 months in prison. Roshan was free on an appeal bond at the time of the incident in question. Perhaps more significant with regard to the question of motive, Burke represents on appeal that as an Iranian national, Roshan is scheduled for deportation from the United States as a result of his conviction.

Roshan argues on appeal that the trial court's ruling permitted Burke to sufficiently explore Burke's alleged role in Roshan's conviction. A review of the record does not support this assertion. Evidence of the consequences of, and Burke's role in, Roshan's conviction was never presented to the jury. Although the record indicates that once Roshan admitted at trial that he had been convicted of a felony, Burke did not pursue the issue of his role in Roshan's conviction as vigorously and thoroughly as he might have, this failure appears to have been due largely to the court's restrictive ruling. Particularly, since the ruling was made orally and immediately prior to trial, Burke's counsel may reasonably have believed that he could not have pressed questioning on this point any further and remained within the ambit of the court's ruling. Our review of the record leaves us satisfied that under the court's *in limine* ruling, Burke was effectively prevented from establishing motive through the exploration of Burke's purported role in Roshan's conviction prior to the incident in question.

Accordingly, the judgment of the district court is vacated and the case is remanded for a new trial.