Larry R. WILLIAMS, Plaintiff-Appellee,

v.

UNION CARBIDE CORPORATION,
Defendant-Appellant.

No. 84–6094.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1986.

Decided May 16, 1986.

Rehearing and Rehearing En Banc
Denied July 2, 1986.

Thomas F. Johnston (argued), Randall D. Noel, Armstrong, Allen, Braden, Goodman, McBride and Prewitt, Memphis, Tenn., for defendant-appellant.

J. Courtney Wilson, Stephen B. Murray, Murray, Murray, Ellis, Braden, Landr, New Orleans, La., Julian R. Murray, Jr. (argued), for plaintiff-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and CHURCHILL, District Judge.*

CHURCHILL, District Judge.

Defendant Union Carbide appeals from the decision of the district court affirming the jury verdict for the Plaintiff, Larry R. Williams. Williams claimed to have been injured through exposure to toxic chemicals while working at Union Carbide's Osceola, Arkansas plant in 1976. The matter was tried under Arkansas law and the jury awarded Williams $80,000 in compensatory damages and $100,000 in punitive damages. Union Carbide's subsequent motion for judgment notwithstanding the verdict and for new trial was denied and this appeal followed.

Four issues are raised on appeal. First, Union Carbide urges that insufficient evidence exists to support the jury's finding that Williams was exposed to toxic chemicals through its negligence. Second, Union Carbide claims that the district court unduly restricted its cross-examination of plaintiff and plaintiff's witnesses. Third, it is argued that there was insufficient evidence to support the jury's award of punitive damages. Fourth, the court's charge on punitive damages is claimed to be contrary to Arkansas law.

Plaintiff Williams began work at defendant's facility in March of 1976. He was employed by an electrical contractor engaged in the plant's construction. Plant operations did not begin until October of 1976. Williams remained at the facility for five weeks while it was operating before he was discharged for reasons unrelated to this lawsuit. Plaintiff testified that during this period, the plant emitted an odor like that of rotten eggs. He stated that he was assigned by his employer to work in several areas where the odor was especially severe. After working some time on the job, Williams claimed that his eyes would burn and he would become nauseous. He testi-

* Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

fied that he had to lay down in spilled chemicals in the "barratte room" in order to do the work assigned him by his employer. Williams further testified that as he left the "barratte" room, a Union Carbide official confronted him and warned him to stay out of the room. Williams also claimed that he came into contact with the chemicals in the plant's "regeneration pit". He suffered nausea and headaches and was forced to leave his work periodically to get fresh air. He believed that Union Carbide officials observed him working in the pit.

Plaintiff introduced evidence that several of the sensors in the plant, which are designed to sound an alarm should chemical levels become dangerous, were inoperative. It was established that several Union Carbide employees, admittedly out of laziness and apathy, would not actually conduct all of the "fume checks" that they were assigned. Rather, they would take some results then pencil in fictitious results for those tests remaining. Plaintiff's expert witness testified that Union Carbide's safety engineer was unqualified because he was a recent college graduate with no similar plant experience. Finally, medical testimony was presented to show that plaintiff had suffered from carbon disulfide poisoning. Carbon disulfide and hydrogen sulfide were chemical by-products of the plant operation.

Defendant contradicted the plaintiff on several points, including the color of the chemicals and the odors that were produced. The plant's safety systems were fully explained and described as being the "state of the art", but the evidence of falsified fume checks was not rebutted. Expert testimony was elicited to show that conditions were not such that high fume concentrations would be possible and medical testimony was offered to rebut plaintiff's claim of exposure. The only doctor to have treated the plaintiff while he was working at the plant reported that he was only suffering from a common rash at the time that he sought treatment.

Defendant sought to impeach the plaintiff in two ways which were not permitted by the district court. First, Union Carbide attempted to examine the witnesses concerning several theft offenses allegedly committed by the plaintiff before he came to work at the Osceola facility. Second, the defendant sought to use the allegations contained in the complaint of an earlier lawsuit which had been filed by the plaintiff. The earlier suit appeared to have claimed damages for the same injuries as alleged in this case but attributed them to an acetylene explosion. The defendant was also a contractor at the Union Carbide facility. *See Williams v. Natkin*, 508 F.Supp. 1017 (E.D.Ark.1981). Union Carbide sought to use the statements as past inconsistent statements under Federal Rule of Evidence 613.

## I

■ Defendant's first assignment of error is that there was not sufficient evidence to support the jury's finding that the plaintiff was exposed to toxic chemicals through its negligence. The sufficiency of the evidence in a federal diversity case is a federal procedural question. *Toth v. Yoder*, 749 F.2d 1190, 1197 (6th Cir.1984); *Pitts v. Electro-Static Finishing*, 607 F.2d 799 (8th Cir.1979). Federal law leaves the decision of whether to reject a jury's verdict to the sound discretion of the trial judge. *Toth, supra* at 1197. A trial judge cannot substitute his own judgment for that of the jury except when the jury's verdict is against the clear weight of the evidence. A jury's verdict that could have reasonably been reached should be left undisturbed. *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir.1982); *TCP Industries, Inc. v. Uniroyal Inc.*, 661 F.2d 542, 546 (6th Cir.1981).

Plaintiff presented evidence on all essential elements of his claim. He testified concerning direct exposure to chemical substances which were followed by adverse physical reactions. Medical testimony was presented that plaintiff had suffered from carbon disulfide poisoning. Carelessness on the part of Union Carbide employees, as well as inoperative safety devices, was demonstrated. Defendant presented evi-

dence to the contrary and it was left for the jury to accept or reject the account of either party. The findings of negligence and proximate cause by the jury could not be disturbed without reweighing the evidence and evaluating the credibility of witnesses. For this reason, the district court did not abuse its discretion in denying the defendant's motion for a new trial.

## II

Union Carbide also charges that the district court erred by restricting its cross-examination concerning the past criminal conduct and the previous lawsuit.

■ We find no error in the restricting of defendant's cross-examination concerning the past criminal conduct. Defendant argues that the alleged bad acts, i.e., stealing cigarettes and liquor and writing bad checks, was proper to rebut the plaintiff's "personality change" claim. Union Carbide relies on the decisions of *Roshan v. Fard*, 705 F.2d 102 (4th Cir.1983) and *Dente v. Riddell, Inc.*, 664 F.2d 1 (1st Cir.1981). In *Roshan*, the fourth circuit held that where past criminal conduct is "central to an understanding of the events ..." it should be explored despite the obvious risk of unfair prejudice. 705 F.2d at 105. The court noted the distinction between proper exclusion where the criminal conduct is a collateral matter and admission where it is not. *Id.* citing *Bowden v. McKenna*, 600 F.2d 282 (1st Cir.1979). Similarly, in *Dente v. Riddell*, evidence of post accident sexual and gambling behavior was admitted to rebut the plaintiff's claim of social inactivity. 664 F.2d at 5–6. In essence, Union Carbide argues that by claiming damages for a "change in personality", Williams has made his past criminal conduct a noncollateral matter.[1] If plaintiff had in fact presented evidence of a "personality change" we might agree. However, plaintiff's evidence, despite being inartfully referred to as concerning a "change in personality", actually described physiological changes. Headaches, sleeping habits, temperament and general health were the topics of plaintiff's evidence. Nothing was brought forward to indicate that the plaintiff's moral character or honesty had been affected by the exposure. Thus the past acts of dishonesty could not have served to rebut the claim and were indeed collateral matters. While perhaps relevant, evidence of the plaintiff's past criminal conduct had little probative value. It certainly possessed the potential for unfair prejudice. It was thus within the discretion of the trial court to exclude the evidence under Federal Rule of Evidence 403. *See All American Life and Casualty Co. v. Oceanic Trade Alliance Council International Inc.*, 756 F.2d 474, 479 (6th Cir.1985) citing *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979).

The trial court also prohibited the defendant from using the allegations made in plaintiff's complaint in the first lawsuit as past inconsistent statements. The court ruled that the statements could not be used because they were made by plaintiff's attorney rather than the plaintiff himself. Plaintiff's attorney had explained to the court that the first lawsuit had been filed primarily out of a concern over the running of the statute of limitations.

■ It is the general rule that "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta*, 662 F.2d 131, 142 (2nd Cir.1981), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). An opening statement made by an attorney is admissible in a later lawsuit against his client. *United States v. McKeon*, 738 F.2d 26 (2nd Cir.1984). An administrative claim filed by an attorney may also be an admission of his client.

---

1. Defendant discusses three specific purposes for the past criminal conduct: to cross examine the plaintiff himself, to cross examine the "before and after witnesses" and for direct examination of defendant's medical experts. All three issues depend on whether the criminal conduct was a collateral matter and are addressed together in the body of this opinion.

*United States v. Flores,* 628 F.2d 521 (9th Cir.1980). Pleadings in a prior case may be used as evidentiary admissions. *Contractor Utility Sales v. Certain-Teed Products Corp.,* 638 F.2d 1061, 1084 (7th Cir.1981). In this case there is no question that the plaintiff's attorney was fully authorized to act and speak for the plaintiff. The statements made in the previous lawsuit were proper for impeachment under Federal Rule of Evidence 613. *Id.* [2] As party admissions, the allegations would also be available as substantive evidence under Federal Rule of Evidence 801(d)(2). The plaintiff's argument that the statements were made merely to preserve legal rights may be quite persuasive, but should have been made to the jury. *Id.* citing *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir.1955).

Although the district court excluded the prior allegations on other grounds, the plaintiff urges that they were inadmissible under Federal Rule of Evidence 403 regardless of the district court's ruling. We cannot agree. Plaintiff's case relied heavily on the fact that his ailments began immediately after leaving the Union Carbide plant. This allowed the inference to be made that the exposure caused the symptoms and that any ill-effects suffered by the plaintiff were at least in some degree caused by the defendant's plant. The acetylene explosion referred to in the first lawsuit posed as a potential intervening cause. For this reason, evidence of the explosion was admitted at trial. Yet, the plaintiff's *belief* that the explosion caused his injuries is also probative, not only to support the intervening cause theory but to impeach the plaintiff's accusation against Union Carbide. Furthermore, we can see no *unfair* prejudice in the admission of the prior

allegations. The hiring of an attorney and the filing of a lawsuit are generally done with considerable thought and care. Absent unauthorized conduct on the part of the attorney, there is nothing unfair about having to explain one's past lawsuits.

For these reasons, we hold that the district court erred in limiting the defendant's examination concerning the earlier lawsuit. We also believe that the error affected the substantive rights of the parties and requires reversal. Since this holding will result in a new trial, we find it advisable to address the issues of Arkansas punitive damages which have and will be raised.

### III

Defendant challenges the sufficiency of the evidence supporting the jury's punitive damage award and assigns error to the court's instruction on punitive damages.

The most recent construction of Arkansas law on punitive damages is found in the Arkansas Supreme Court's decision in *Freeman v. Anderson,* 279 Ark. 282, 651 S.W.2d 450 (1983). In *Freeman,* the court ruled that punitive damages were only available when "the defendant acted wantonly or with such a conscious indifference to the consequences that malice might be inferred." *Id.* Essential to an award of punitive damages is that;

> it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred.

**2.** At trial, defendant argued that the rule of *Wilson v. Scripps-Howard Broadcasting Co.,* 642 F.2d 371 (6th Cir.1981) was applicable to this case. *Wilson* involved a libel action brought by a rancher against a television station for reporting that there were starving cattle on the plaintiff's ranch. After plaintiff testified that the defendant's news report surprised him, defendant sought to use the allegations made by other persons against the plaintiff in earlier lawsuits, which alleged mistreatment of animals, to rebut

the plaintiff's testimony. This court held that while the statements were hearsay and could not be used to establish the mistreatment of the animals, they could be used to impeach the claimed surprise. *Id.* at 376.

*Wilson* does apply to this case insofar as defendant sought to impeach the plaintiff with his past accusations. Because the past accusations were made by the plaintiff, the case for admission is much stronger because the statements are not hearsay and have a broader use.

651 S.W.2d at 452. It is well established in Arkansas that negligence, even gross negligence, does not suffice for an award of punitive damages. *Dalrymple v. Fields,* 276 Ark. 185, 633 S.W.2d 362 (1982). Negligent handling of dangerous substances such as electricity does not necessarily warrent punitive damages. *Woodruff Electrical Cooperative Corp. v. Daniel,* 472 S.W.2d 919 (Ark.1971). The elements of a punitive damage claim are;

1. negligent or intentional conduct,
2. that the defendant knew or should have known would naturally or probably result in injury,
3. which was continued in reckless disregard for the consequences, from which malice be inferred.

*See* Arkansas Model Instruction 2217. Malice, either actual or inferred, is an essential element.

While the evidence was sufficient to show negligence on the part of the defendant, we find nothing that would justify an inference of malice. Under the circumstances of this case, the failure of defendant's employees to perform all the fume checks that they were assigned was certainly careless, perhaps even grossly negligent, but not malicious. There is no evidence that the defendant displayed "reckless disregard" toward any of the claimed defects in its safety system. We therefore hold that insufficient evidence existed to permit the jury to consider awarding punitive damages. Accordingly, the new trial that we order will be restricted to the issues of liability and compensatory damages.

█ The court's charge on punitive damages did not expressly include the inferred malice requirement. Although now a moot issue in this case, we believe that it is the better practice for the federal courts to use the state approved instructions in diversity cases. Arkansas Model Instruction 2217 has been approved by the Arkansas courts. *Decker v. Gibbons,* 250 Ark. 1045, 468 S.W.2d 252 (1971).

## IV

For the above reasons, the judgment of the district court is REVERSED AND REMANDED for a new trial in accordance with this opinion.