912 F.2d 465
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Danny W. BERLIN, Plaintiff-Appellee,
v.
THE CELOTEX CORPORATION, Defendant-Appellant.
 No. 89-6016.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1990.
 
 Before KENNEDY and BOGGS, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Celotex Corporation appeals the judgment holding it liable for plaintiff-appellee Danny W. Berlin's asbestos-related injuries. A jury awarded Berlin compensatory damages of $2.4 million. Celotex raises three issues on appeal: (1) whether statements made by Celotex's counsel constitute a judicial admission of Celotex's liability for Philip Carey's acts; (2) whether Celotex was entitled to a judgment notwithstanding the verdict due to the unforeseeability of Berlin's injuries; and (3) whether the trial court erred in not granting Celotex a remittitur.
 
 
 2
 From 1963 to 1987 Danny Berlin was employed as an insulator in Tennessee. During the course of his employment he was exposed to materials containing asbestos that were manufactured by several companies, including the Philip Carey Corporation. In 1972 Celotex Corporation acquired Philip Carey. Plaintiff introduced no evidence concerning this acquisition, and made no effort to prove that Celotex had acquired Philip Carey's liabilities. Celotex, however, never argued that it was not the successor in interest to Philip Carey. In fact, counsel for Celotex stated in his opening and closing statements that Celotex was responsible for any injuries to Berlin that were caused by Philip Carey. In addition, in arguing that the punitive damages claim should receive a directed verdict, Celotex argued that it could not be held liable for punitive damages because as a successor in interest it could only be held liable for compensatory damages. Berlin brought this law suit against Celotex and several other insulator manufacturers after experiencing medical problems that he claimed were caused by his asbestos exposure. Berlin settled with the other manufacturers before trial.
 
 
 3
 Berlin testified that he began to experience pain in his chest in 1978, at the age of 37. He was diagnosed with pleurisy, a painful lung condition, and underwent several medical tests and procedures in an effort to reduce the pain. In 1979 he developed another pleural effusion. At that time his doctors tried several methods to reduce his pain, including an intercostal nerve block, in which alcohol is used to kill the nerves, and intercostal neuronectomies, in which nerves between the ribs are severed surgically. None of these procedures were successful, and the nerve block actually caused Berlin greater pain. Since the discovery of his first pleural effusion, Berlin has been prescribed narcotic pain killers. His doctors testified that they could not take him off the narcotics because the pain would be too great, but that he has developed an addiction to them.
 
 
 4
 In a further attempt to lessen his pain, Berlin underwent a ganglionectomy, an operation which involves cutting the nerves along the spinal column. This procedure was very painful, and although it temporarily relieved much of his pain in the upper chest, he developed equally intense pain in his lower chest. In addition, Berlin and his doctor testified that he frequently experiences muscle spasms that are so severe that his body becomes contorted and he is unable to move or speak.
 
 
 5
 There was testimony that Berlin has asbestosis, and that his pleural effusions were caused by his exposure to asbestos. There was also testimony that Berlin is totally disabled from the pain which results from the pleural effusions and the surgeries, and that he is therefore unable to work. The experts at trial stated that the severe pain experienced by Berlin was very rare in pleurisy patients. They testified that asbestos exposure was known to be a cause of pleural effusions and asbestosis before Berlin began his work as an insulator. Berlin testified that he never saw any warning labels on any product manufactured by Philip Carey.
 
 
 6
 An economist testified that given Berlin's life and work expectancy, the economic value of his life was $666,552. Berlin testified that he has incurred $49,000 in medical expenses and that his prescriptions cost $175 per month.
 
 
 7
 The trial judge instructed the jury that Celotex was the successor in interest of the Philip Carey Corporation and was therefore responsible for Berlin's injuries if they were proximately caused by Philip Carey. The jury returned a verdict for the plaintiff, and awarded him $2.4 million in compensatory damages, which was reduced on account of the prior settlements to $1.89 million. Celotex moved for a judgment notwithstanding the verdict, which the District Court denied. Celotex appeals to this Court for a judgment notwithstanding the verdict, or in the alternative, a new trial, or a remittitur.
 
 
 8
 Berlin introduced no evidence at trial that Celotex was the successor in interest to the Philip Carey Corporation. Celotex argues that because Berlin had the burden of proof, the evidence was insufficient to support the verdict against Celotex, which could only stand if Celotex was a successor, and the judgment should be reversed, or a new trial granted.
 
 
 9
 The District Court, in denying Celotex's motion for a judgment notwithstanding the verdict or new trial, held that Celotex's counsel's remarks at trial concerning its relationship with Philip Carey constituted a judicial admission of Celotex's status as a successor in interest to the Philip Carey Corporation. It was therefore unnecessary for Berlin to introduce any evidence concerning that relationship.
 
 
 10
 In general, statements made by counsel can be considered judicial admissions.
 
 
 11
 The binding effect on a party of a clear and unambiguous admission of fact made by his or her attorney in an opening statement was acknowledged by the Supreme Court in Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539 (1880) and has been frequently recognized in subsequent lower court decisions involving civil cases.
 
 
 12
 United States v. McKeon, 738 F.2d 26, 30 (2d Cir.1984).
 
 
 13
 This Court stated in Williams v. Union Carbide Corp., 790 F.2d 552, 555 (6th Cir.), cert. denied, 479 U.S. 992 (1986) (citing McKeon ) that an "opening statement made by an attorney is admissible in a later lawsuit against his client." In United States v. Blood, 806 F.2d 1218 (4th Cir.1986), the Fourth Circuit applied the McKeon rationale to the use of statements made in the same case and held that if counsel's statements were clear and unambiguous, they constituted a judicial admission. See also United States v. Cravero, 530 F.2d 666 (5th Cir.1976) (defense counsel's discussion at the bench constituted an admission when it was clear from the discussion that defense had conceded what would otherwise be at issue).
 
 
 14
 Based on all of the circumstances at trial including the opening and closing arguments, the discussion about punitive damages, and Celotex's failure to argue that it was not responsible for Philip Carey's liabilities, the District Court determined that Celotex was not contesting the issue of successor in interest. Counsel's statements were clear and unambiguous. Counsel's admission removed from dispute the issue of Celotex's status as a liable successor, relieving Berlin of the responsibility of proving it at trial. The District Court did not err in holding that Celotex admitted responsibility for Philip Carey's acts, and the instruction on that subject was therefore correct. The District Court properly denied Celotex's motion for a new trial on this issue.
 
 
 15
 Celotex claims that because the severity of Berlin's injuries was unforeseeable Celotex cannot be held liable for them. Celotex's claim has no merit. Foreseeability of the specific harm or amount of pain which a product might cause is not necessary. In order to be held liable a defendant must have been able to foresee the "general manner in which the injury occurred." Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 871 (Tenn.App.1985). Under Tennessee law the foreseeability of the exact harm to the plaintiff is not necessary. Instead, it must be foreseeable only that harm may result from the acts of the defendant. See Spivey v. St. Thomas Hospital, 31 Tenn.App. 12, 25 (Tenn.1947).
 
 
 16
 The evidence was sufficient to show that the injuries sustained by Berlin, and the pain he suffered, were proximately caused by his asbestos exposure. "As long as the defendant's conduct is a substantial factor causing the injury, it need not be the sole cause or even the last act prior to the injury." Roberts, 692 S.W.2d at 871. There was testimony that it had been known for many years that exposure to asbestos can cause asbestosis and pleurisy. Therefore, it was foreseeable that the use of asbestos materials by insulators could cause injury. Although much of Berlin's pain may have been caused by his medical treatment, the treatment was needed because of his ailments caused by asbestos exposure. The fact that Berlin's pleurisy has resulted in an unusually painful condition does not avoid Celotex's liability.
 
 
 17
 The amount of damages awarded is within the province of the jury. "The appellate court will only consider whether the trial court abused its discretion by granting an award so large as to shock the judicial conscience." Thompson v. National R.R. Passenger Corp., 621 F.2d 814, 827 (6th Cir.), cert. denied, 449 U.S. 1035 (1980)[1]. The trial judge did not abuse his discretion in refusing to grant a remittitur. There was testimony that Berlin became disabled at the age of 47 and that his economic value from that time was $666,552, that he has incurred $49,000 in medical expenses and that his prescriptions cost $175 per month. He suffers an exceptionally high degree of continuing pain and this condition will last the rest of his life. An award of $2.4 million does not shock the judicial conscience. The trial judge's refusal to grant a remittitur is therefore affirmed.
 
 
 18
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 Thompson was tried without a jury. It was the trial judge, therefore, who originally awarded the damage amount in the place of the jury