The STATE of Ohio, Appellee,

v.

DOUGLAS, Appellant.

[Cite as *State v. Douglas,* 164 Ohio App.3d 467, 2005-Ohio-6144.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–04–1055

Decided Nov. 18, 2005.

Jim Petro, Ohio Attorney General, and Jonathan L. Metzler, Associate Attorney General, for appellee.

Kenneth W. Phillips, for appellant.

Skow, Judge.

{¶ 1} Appellant, William Douglas, appeals his conviction in the Lucas County Court of Common Pleas for workers' compensation fraud. For the reasons that follow, the conviction is affirmed.

{¶ 2} Appellant was indicted for workers' compensation fraud, a violation of R.C. 2913.48, as a felony of the fourth degree. Specifically, the indictment charged that "from on or about March 23, 2001 to on or about July 24, 2001," appellant, "with purpose to defraud, or knowing that he was facilitating a fraud, did receive workers' compensation benefits to which he was not entitled, and/or did make or present, or cause to be made or presented a false or misleading statement with the purpose to secure payment for goods or services rendered under Chapter 4121., 4123., 4127., or 4131 of the Revised Code or to secure workers' compensation benefits, and the value of the goods, services, property, or money stolen is five thousand dollars ($5,000.00) or more, and less than one hundred thousand dollars ($100,000.00), in violation of Ohio Revised Code § 2913.48, Workers' Compensation Fraud, a Felony of the Fourth Degree."

{¶ 3} R.C. 2913.48 provides:

{¶ 4} "(A) No person, with purpose to defraud or knowing that the person is facilitating a fraud shall do any of the following:

{¶ 5} "(1) Receive workers' compensation benefits to which the person is not entitled;

{¶ 6} "(2) Make or present or cause to be made or presented a false or misleading statement with the purpose to secure payment for goods or services rendered under Chapter 4121., 4123., 4127., or 4131. of the Revised Code or to secure workers' compensation benefits[.]"

{¶ 7} Reading the statute in conjunction with the indictment makes clear that appellant was indicted in the alternative under R.C. 2913.48(A)(1) and (A)(2).

{¶ 8} The following facts were adduced at trial. On June 8, 2000, appellant suffered a back and leg injury while working as an asphalt laborer. He subsequently applied for and received temporary total disability ("TTD") benefits from the Ohio Bureau of Workers' Compensation ("BWC").

{¶ 9} The BWC awards TTD benefits to injured workers who are temporarily unable to work in any capacity as a result of a work-related injury. Claimants are not entitled to TTD benefits over any period in which they work. A claimant who does work, in any capacity, during his or her disability period is required to report this activity to the BWC. In addition, because the amount of TTD benefits to which a claimant is entitled is reduced by the amount of any unemployment benefits received, claimants are also required to report any unemployment income they may have received over the disability period.

{¶ 10} In order to receive TTD benefits, injured workers must have their disability certified to the BWC by a physician. The physician, after speaking to and examining the claimant, determines whether to certify the disability on a C–

84 application for TTD benefits. The C–84 is then submitted to the BWC for consideration in determining benefits.

{¶ 11} The C–84 is a two-page document. The first page contains information about the claimant's injury, work activity, and other benefits received or applied for. The claimant verifies the information by signing the first page, just beneath an acknowledgement that he or she is not permitted to work while receiving TTD benefits. The acknowledgment further provides that the claimant has answered the application questions truthfully and that the claimant could be subject to criminal prosecution for making false statements or for knowingly receiving compensation to which he or she is not entitled.

{¶ 12} The second page of the C–84 is completed by the claimant's treating physician or physician of record. The physician of record supplies information such as the nature and extent of the claimant's injury, the claimant's job at the time of the injury, whether the claimant is capable of returning to work, the time period over which the claimant will be unable to return to work, and the return-to-work date.

{¶ 13} When the initial paperwork for a new TTD benefits claim is submitted to the BWC, the claim is assigned to a claims service specialist. The claims service specialist reviews the information contained within the C–84 form to determine whether the claimant is eligible for TTD benefits.

{¶ 14} The TTD benefits period is based on the disability dates that the physician of record notes on the C–84. When the claimant's disability continues beyond the initial benefits period, a new C–84 may be filed on the claimant's behalf in order to extend the benefits for an additional period.

{¶ 15} In the instant case, appellant received TTD benefits over broken periods from August 15, 2000, to April 10, 2002. As indicated above, appellant's indictment targeted a time period from on or about March 23, 2001, to on or about July 24, 2001.

{¶ 16} During the period set forth in the indictment, appellant signed two C–84 forms: one on May 12, 2001, and another on June 25, 2001. Each form warned that he was not entitled to TTD benefits if he worked. Further, throughout appellant's TTD claim period, appellant was paid by BWC warrants, each of which warned that he was not entitled to the money if he worked.

{¶ 17} Despite these rules for entitlement, and the related warnings to appellant, appellant worked for three different employers over the period that he claimed he was disabled. From March 23, 2001, to March 25, 2001, he worked as a security guard for Raceway Park, where he worked approximately 15.5 hours and earned $108. From April 21, 2001, to June 30, 2001, he worked as an asphalt laborer for Cappelletty Brothers, where he worked approximately 231 hours and

earned $2,422.88. And, finally, from June 21, 2001, to July 24, 2001, he worked as an asphalt laborer for Atlas Paving, where he worked 179 hours and earned $4,010.59.

{¶ 18} In addition to misrepresenting his work history to both the BWC and his physicians in connection with the C–84 pages that he signed on May 12, 2001, and June 25, 2001, appellant failed to otherwise notify the BWC of any of these work activities. On the two relevant C–84s, appellant reported that he last worked on June 8, 2000.

{¶ 19} Appellant also indicated on those forms that he had not received any employment benefits during his disability period. In fact, appellant did receive unemployment benefits over the period covered by the indictment.

{¶ 20} The BWC relied on the C–84s when determining whether TTD benefits should be awarded to appellant. According to testimony by BWC claims specialist Cowenda Wood, had appellant indicated on one of those forms that he had worked during his disability period, the BWC would not have awarded him TTD benefits.

{¶ 21} Similar testimony was given by Fred Ho–A–Lim, M.D., who was appellant's physician from March 2001, to September 2001. According to Dr. Ho–A–Lim, he certified appellant's disability and completed C–84 forms—including several signed during the indictment period—based on information that appellant provided to him during his office visits. That information included statements by appellant that he was not working because he was in too much pain and that he had not worked since June 8, 2000. Dr. Ho–A–Lim testified that had he known of appellant's work activity, he would not have certified appellant's disability.

{¶ 22} Appellant misrepresented his employment history to chiropractic neurologist Mark Nader during a claim-related independent medical exam that took place on March 28, 2001. Specifically, appellant told Dr. Nader that he was not working, despite the fact that he had worked for Raceway Park just days before the exam. Dr. Nader testified that had he known that appellant had worked as recently as March 25, 2001, he would have included that information in his report to the BWC.

{¶ 23} Appellant's weekly benefits rate was $428. Cowenda Wood and BWC worker Sharon Davis testified that for the period April 21, 2001, to July 24, 2001, appellant received TTD benefits in an amount between $5,000 and $6,000. The evidence also demonstrated, however, that the majority of those benefits, although intended to cover the time period set forth in the indictment, were actually *paid* sometime after that period.

{¶ 24} At the conclusion of the state's case, appellant moved for a judgment of acquittal. The trial court granted appellant's motion, in part, under the first alternative of the indictment, on the grounds that there was no evidence that during the indictment period appellant actually *received* workers' compensation benefits to which he was not entitled in an amount greater than $5,000 but less than $100,000. Instead, the court instructed the jurors that under the first alternative of the indictment, R.C. 2913.48(A)(1), they could find appellant guilty of a felony of up to the fifth degree; that is, they could find appellant guilty of unlawfully receiving workers' compensation benefits in an amount of $500 or more but less than $5,000. The trial court denied appellant's motion with respect to the indictment's second alternative, under R.C. 2913.48(A)(2). Regarding that alternative, the court instructed the jurors that they could find appellant guilty of a felony of up to the fourth degree; that is, they could find appellant guilty of making false statements to secure workers' compensation benefits in an amount of $5,000 or more but less than $100,000.

{¶ 25} The jury found appellant guilty under both alternatives of the indictment, and the state elected to proceed upon the guilty verdict for the felony of the fourth degree.

{¶ 26} The trial court sentenced appellant to two years of community control, including a 30–day commitment to the Corrections Center of Northwest Ohio, participation in a drug/alcohol-treatment program, periodic urinalysis, employment, payment of $2,534.76 in restitution,[1] and payment of court costs. The trial court also ordered appellant to pay $2,500 in prosecutorial costs and $2,000 in investigative costs.

{¶ 27} Appellant subsequently filed a notice of appeal, wherein he raises the following assignments of error:

{¶ 28} I. "The conviction was against the manifest weight of the evidence.

{¶ 29} II. "Hearsay evidence was erroneously admitted to establish the truth of the ultimate issue."

{¶ 30} We begin with an examination of appellant's claim that his conviction was against the manifest weight of the evidence.

{¶ 31} When reviewing a challenge that a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and

---

1. According to a statement in the state's brief, the original restitution amount would have been $6,329; however, prior to trial, appellant was awarded $3,794 in additional workers' compensation benefits that were ultimately absorbed by the BWC, applied against appellant's overpayment from this matter, and credited toward his criminal restitution.

determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id., quoting *State v. Martin.*

{¶ 32} Appellant was convicted of workers' compensation fraud, pursuant to R.C. 2913.48(A)(2), as a felony of the fourth degree, and pursuant to R.C. 2913.48(A)(1), as a felony of the fifth degree. As stated above, R.C. 2913.48 provides:

{¶ 33} "(A) No person, with purpose to defraud or knowing that the person is facilitating a fraud shall do any of the following:

{¶ 34} "(1) Receive workers' compensation benefits to which the person is not entitled;

{¶ 35} "(2) Make or present or cause to be made or presented a false or misleading statement with the purpose to secure payment for goods or services rendered under Chapter 4121., 4123., 4127., or 4131. of the Revised Code or to secure workers' compensation benefits[.]"

{¶ 36} " 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). " 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

{¶ 37} Appellant's intent to defraud was clearly evidenced by the misrepresentations he made when he applied for his workers' compensation benefits. Specifically, during the indictment period of March 23, 2001, to July 24, 2001, appellant knowingly misrepresented his work status both to workers' compensation physicians Ho–A–Lim and Nader and on the two relevant C–84 forms that he submitted to the BWC. Throughout the relevant period, he maintained that he had not worked since June 8, 2000. The evidence was clear, however, that from March 23, 2001, to July 24, 2001, appellant had worked for no less than three different employers.

{¶ 38} Dr. Ho–A–Lim relied on appellant's misrepresentations when he certified to the BWC that appellant was unable to work in any capacity. The BWC

likewise relied on those misrepresentations when it decided to award appellant benefits. According to testimony by Dr. Nader, had he known of appellant's work activity, he would have put the BWC on notice by including it in his report to the agency.

{¶ 39} Further evidence of appellant's intent to defraud appears on each of the warrants he endorsed. Above each endorsement, appellant was warned that he was not entitled to the payment if he was working. He nevertheless negotiated the checks.

{¶ 40} In addition, at the same time that appellant reported to the BWC that he was unable to work, he applied for and received unemployment benefits. On his applications for unemployment benefits, appellant represented that he was capable of working and that he had not applied for, nor was he receiving, TTD benefits.

{¶ 41} Finally, on both of the relevant C–84 forms, appellant falsely indicated that he had not received unemployment compensation since his injury.

{¶ 42} On the basis of the foregoing evidence, we find appellant's intent to defraud to have been abundantly demonstrated.

{¶ 43} Arguing against this conclusion, appellant claims that the evidence was not compelling with respect to his failure to report that he was working. First, he points to a single C–84 on which he did report that he had applied for unemployment benefits. The C–84 to which appellant refers was the first one ever filed in this matter and was filed on August 16, 2000. Because it was not one of the C–84s that was filed within the time period in question, its relevance is questionable at best. If anything, it demonstrates awareness on the part of appellant of his obligation to report application for and receipt of unemployment benefits.

{¶ 44} Appellant next claims that testimony by one of the BWC's employees who had worked with appellant indicated that "she did not believe Mr. Douglas acted deliberately when completing his forms and where there were inconsistencies [sic]." In making this assertion, appellant apparently refers to the testimony of BWC claims specialist Cowenda Wood. Wood, when asked whether she thought appellant had acted deliberately when he indicated that he had not filed for unemployment, answered, "I couldn't tell you." Appellant's characterization of Wood's testimony is not just exaggerated. It is wrong.

{¶ 45} Appellant next states that one of the C–84 forms had a signature that Wood "admitted was not [appellant's]." Once again, appellant mischaracterizes the testimony. In fact, Wood expressly verified the signature on the document as belonging to appellant. Although she did state that the "printing" on the document was not appellant's, this apparent discrepancy was clarified by Dr. Ho–

A–Lim, who testified that one of his office workers would fill in the C–84s as appellant answered the questions. Thus, the evidence consistently and adequately demonstrates that the information that appeared on the form was based on appellant's representations.

{¶ 46} In addition, the C–84 in question was dated October 1, 2000, and therefore was not executed within the relevant time period.

{¶ 47} Appellant next points to two C–84s that were dated within the relevant time frame but do not have his signature. Those documents—dated May 11, 2001, and July 24, 2001—are the second pages of two C–84s. That is, they are the pages of the form that are to be—and, in fact, were—filled out and signed by the physician.

{¶ 48} Because each of appellant's arguments has been shown to be completely without merit, the arguments have no effect on this court's determination regarding appellant's intent to defraud.

{¶ 49} In addition to an intent to defraud, the evidence amply demonstrates that the misrepresentations made by appellant during the indictment period resulted in the BWC awarding appellant between $5,000 and $6,000 in TTD benefits to which he was not entitled.

{¶ 50} Appellant challenges the amount of benefits received, arguing that because the majority of the relevant warrants were made out to both appellant and his attorney, they fail to demonstrate that it was appellant who received them. We are not persuaded by this argument. First, appellant had to authorize the naming of the attorney on the check and the attorney's receipt of the money. In addition, although appellant might never have had the money placed in his own bank account, he nevertheless received the full benefit of those funds because they were used to pay a debt that he would otherwise have had to pay by some other means. Appellant's argument is therefore without merit.

{¶ 51} Appellant was properly found guilty of violating R.C. 2913.48(A)(2), as a felony of the fourth degree.

{¶ 52} Because we are affirming appellant's conviction for workers' compensation fraud as a felony of the fourth degree pursuant to R.C. 2913.48(A)(2), we do not find it necessary to reach an alternative argument by the state that the jury should have been permitted to convict appellant under R.C. 2913.48(A)(1) as a felony of the fourth degree. And because the evidence did persuasively establish that during the indictment period appellant received benefits in an amount of $500 or more but less than $5,000, we find that appellant was properly found guilty of violating R.C. 2913.48(A)(1) as a felony of the fifth degree.

{¶ 53} Appellant's conviction was just and consistent with the evidence presented. Accordingly, we find appellant's first assignment of error not well taken.

{¶ 54} Appellant argues in his second assignment of error that hearsay evidence was erroneously admitted to establish the truth of the ultimate issue. Specifically, appellant claims that the trial court erred in admitting statements that were offered against him by his attorney in administrative hearings that were held before the Industrial Commission on June 19, 2002, and August 15, 2002. The hearings dealt with the fraud investigation of appellant's workers' compensation claim.

{¶ 55} BWC special agent Sheila DeBrock–Matzinger testified that she was present at both hearings and that appellant was present and represented by counsel, who made statements on appellant's behalf. According to DeBrock–Matzinger, appellant's attorney admitted both that appellant had signed the C–84 forms that were submitted in his claim and that appellant had worked for Raceway Park, Cappelletty Brothers, and Atlas Paving while he received his TTD benefits. She further testified that appellant's attorney acknowledged that appellant was not entitled to the TTD benefits for the time periods that he worked.

{¶ 56} Evid.R. 801(D)(2) provides as follows:

{¶ 57} "A statement is not hearsay if: * * *(2) Admission by party-opponent. The statement is offered against a party and is * * *(c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship * * *."

{¶ 58} We find that the statements made by appellant's attorney during the Industrial Commission hearings were admissible nonhearsay admissions of a party opponent as either a statement by a person authorized by appellant to make a statement concerning the subject or a statement by appellant's agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship. Evid.R. 801(D)(2); see, also, *Williams v. Union Carbide Corp.* (C.A.6, 1986), 790 F.2d 552, 555, quoting *United States v. Margiotta* (C.A.2 1981), 662 F.2d 131, 142 (stating in regard to Fed.R.Evid. 801(d)(2), which parallels Evid.R. 801(D)(2), that "[i]t is the general rule that 'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney'"). It was for the jury to determine the weight and credibility to give DeBrock–Matzinger's testimony. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212.

{¶ 59} Even assuming arguendo that appellant's attorney's statements were improperly admitted, their admission was clearly harmless in light of the large quantity of other evidence that was admitted in support of the conviction.

{¶ 60} Accordingly, appellant's second assignment of error is not well taken.

{¶ 61} The judgment of conviction is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal are awarded to Lucas County.

Judgment affirmed.

SINGER, P.J., and HANDWORK, J., concur.