**Shelby T. WILSON, Plaintiff-Appellee Cross-Appellant,**

v.

**SCRIPPS-HOWARD BROADCASTING COMPANY, d/b/a WMC–TV, Channel 5, Defendant-Appellant Cross-Appellee.***

Nos. 78–1585, 78–1586.

United States Court of Appeals, Sixth Circuit.

April 16, 1981.

Rehearing and Rehearing En Banc Denied June 4, 1981.

* *Editor's Note:* The opinion of the United States Court of Appeals, Ninth Circuit in *In re Roberts Farms Inc.,* published in the advance sheets at this citation (642 F.2d 371), was withdrawn from bound volume and will be republished.

Lucius E. Burch, Jr. and Charles F. Newman, Burch, Proter & Johnson, John J. Heflin, III, Memphis, Tenn., for defendant-appellant cross-appellee.

Fred M. Ridolphi, Jr., Prince C. Chambliss, Jr., Armstrong, Allen, Braden, Goodman, McBrode & Prewitt, Thomas R. Prewitt, Jr., Memphis, Tenn., for plaintiff-appellee cross-appellant.

Before MERRITT, KENNEDY and BOYCE F. MARTIN, Jr., Circuit Judges.

MERRITT, Circuit Judge.

The jury rendered a verdict for plaintiff in this Tennessee libel case, and defendant raises three questions on appeal: (1) Was plaintiff a public figure so that a malice standard rather than a negligence standard applies? (2) If a private figure, does plaintiff have the burden of proving the falsity of the defamatory statement, or does defendant have the burden of proving its truth? (3) Did the District Court err in excluding evidence of prior suits and claims related to plaintiff's reputation? We decide the first issue in favor of plaintiff and the second and third issues in favor of defendant and reverse and remand for a new trial.

## I. STATEMENT OF THE CASE

Plaintiff, Shelby Wilson, brought suit against Scripps-Howard Broadcasting Company, the owner of WMC–TV, Channel 5, in Memphis, Tennessee. On the evening of January 28, 1975, Channel 5 twice broadcast a report of "cow deaths" and "starving cattle" on plaintiff's cattle ranch. Plaintiff Wilson sought damages for personal humiliation, embarrassment, impairment of reputation, and loss of earnings on an oral contract. The jury awarded Wilson $75,000. The District Court ordered a new trial unless plaintiff accepted a remittitur reducing the judgment to $30,000, which plaintiff accepted "under protest."

During the late 1950s and 1960s, Wilson acquired a reputation as a successful cattleman. In 1968 he transported a herd of expensive cattle from Colorado to Mississippi and sought and obtained publicity to advertise this event. By 1974 plaintiff's farming operation in Tunica County, Mississippi—sixty miles south of Memphis and within the viewing area of Channel 5—was no longer a commercial success.

Channel 5 received a report that plaintiff was broke and his cattle were starving. The station sent a reporter and a photographer out to the farm to investigate. Plaintiff talked with the reporter and denied any mistreatment. He then allowed the reporter and photographer to visit the foreman of the farm. The photographer filmed some of the cattle, including one dead calf. On the 5 o'clock and 10 o'clock news, Channel 5 reported that the high cost of feed required plaintiff to stop feeding the cattle. The report said that "because [Wilson] had no money he stopped feeding the cattle" and that "many [cattle] died and their remains were burned." It also stated that Wilson denied that the cattle starved and attributed the deaths to the weather.

At trial defendant attempted to introduce evidence of prior lawsuits and claims made against plaintiff for failure to properly feed and care for cattle. The trial court refused to admit the evidence and refused to allow the defense to cross-examine plaintiff or plaintiff's witness Rose about the prior claims.

At the close of the evidence the trial judge concluded that plaintiff was not a public figure. He also noted that "from the overall proof, it seems to me that the defendant has a pretty strong position on the accuracy ... of this situation." The jury was instructed that plaintiff had the burden to establish the essential elements of his claim by a preponderance of the evidence. The Court also charged that truth "is a defense to a libel action .... The defendant has the burden of proving substantial truth by a preponderance of the evidence."

## II. PLAINTIFF IS NOT A PUBLIC FIGURE

If plaintiff is a public figure, he "may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowl-

edge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). *Gertz* provides general guidelines to assist the media and the courts in determining whether an individual is a public figure: does a public controversy exist, and what is the nature and extent of the individual's participation in that controversy. The nature and extent of the individual's participation is determined by looking to three factors: the extent to which participation in the controversy is voluntary, the extent to which there is access to channels of effective communication in order to counteract false statements, and the prominence of the role played in the public controversy. *Id.* at 344–45, 94 S.Ct. at 3009.

■ The District Court properly concluded that plaintiff was not a public figure. Although plaintiff had seven years earlier acted in a manner that drew media attention to his cattle business, the trial court concluded that "the notoriety is just not that great . . . . Specifically, he did not voluntarily inject himself into *this controversy*" (emphasis added). The present controversy concerning cattle deaths is different from the earlier isolated efforts of Wilson to promote his cattle business. Moreover, there is no evidence that he knowingly exposed himself to the increased media attention. Nor did plaintiff have access to effective channels of communication. Although he had the opportunity to respond in the news report, he did not have "regular and continuing access to the media." *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979). Recent Supreme Court decisions clearly indicate that plaintiff is not a public figure so that the media deserves *New York Times* actual malice protection. *See Hutchinson v. Proxmire, supra* (researcher who received federal funds not a public figure); *Wolston v. Reader's Digest Ass'n,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979) (failure to appear before grand jury and citation for contempt did not render person a public figure). The TV report was unrelated to the prior coverage of plaintiff and was prompted by an independent investigation by the TV station.

## III. PLAINTIFF HAS THE BURDEN OF PROVING FALSITY

*Gertz* left states free to adopt any rule of liability concerning private plaintiffs so long as "they do not impose liability without fault." 418 U.S. at 347, 94 S.Ct. at 3010. The next issue presented appears to be one of first impression for federal appellate courts: whether in light of *Gertz* the First Amendment controls the question of who has the burden of proof on the issue of truth or falsity when the plaintiff is not a public figure.

Tennessee allows a private plaintiff to recover on a showing of negligence, or what a "reasonably prudent person would, or would not, have done under the same or similar circumstances." *Memphis Pub. Co. v. Nichols,* 569 S.W.2d 412, 418 (Tenn.1978). Tennessee has determined that it will continue to follow the common law rule that a plaintiff does not have to prove that a statement is false. Falsity is presumed, and the defendant must prove the truth of the defamatory statement in order to escape liability. *Id.* at 420.

Tennessee follows the common law rule developed during the era of strict liability in defamation cases. At common law, prior to the application of constitutional standards in the area of libel and slander, the truth of the defamatory statement was an affirmative defense for the defendant to prove. Restatement of Torts §§ 518, 613(2) (1938). Although falsity was an element of a cause of action for defamation, *id.* at § 558, once a statement was shown to be defamatory, falsity was presumed. Prosser, Torts § 116 (4th ed. 1971); *Memphis Pub. Co. v. Nichols,* 569 S.W.2d at 420. The burden of nonpersuasion on the issue of truth, the risk of jury uncertainty, fell on the defendant.

This common law allocation of the burden of proof is drawn into question by the constitutional prohibition against liability with-

out fault established in *Gertz*, 418 U.S. at 347–48, 94 S.Ct. at 3010–3011. The language of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and later cases makes clear that the burden of demonstrating the falsity of the defamatory statement rests on the plaintiff when the malice standard applies. *See, e. g., Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964) (public official must establish that the utterance was false); *Rosenblatt v. Baer*, 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966) (same).

 The same rule requiring the plaintiff to prove falsity is required under the First Amendment in libel cases based on negligence or some other standard of fault of lesser magnitude than malice. The Supreme Court in stating that "demonstration that an article was true would seem to preclude finding the publisher at fault," *Time, Inc. v. Firestone*, 424 U.S. 448, 458, 96 S.Ct. 958, 967, 47 L.Ed.2d 154 (1976), has suggested that falsity is an element of fault in defamation cases. In defamation actions brought by private persons against media defendants, Tennessee has defined a standard of fault based on negligence:

[T]he appropriate question to be determined from a preponderance of the evidence is whether the defendant exercised reasonable care and caution in checking on the truth or falsity and the defamatory character of the communication before publishing it.

*Memphis Pub. Co. v. Nichols*, 569 S.W.2d at 418. It would ordinarily be impossible to determine whether the defendant exercised reasonable care and caution in checking on the truth or falsity of a statement without first determining whether the statement was false. The publisher's carelessness must have caused an error in accuracy, an error in failing to ascertain that the defamatory statement was false. The two elements of carelessness and falsity are inevitably linked, for a defendant should not be liable if it "took every reasonable precaution to insure the accuracy of its assertions." *Gertz, supra*, 418 U.S. at 346, 94 S.Ct. at 3010. Fault then must be held to consist of two elements: carelessness and falsity.[1]

In order for the jury to decide the issue of fault, it must weigh together and balance the facts concerning falsity and the facts concerning carelessness. The degree of uncertainty in the juror's mind on the issue of truth and the degree of uncertainty on the issue of carelessness must be taken into account at the same time in arriving at a conclusion on the issue of fault. Fairness and coherent consideration of the issue lead us to the conclusion that the party with the burden of proving carelessness must also carry the burden of proving falsity as a part of the concept of fault.

In addition, a rule that places the burden of proving truth on the defendant permits the imposition of liability without fault in certain situations. "[W]hen the trier of fact is unable to determine the truth or falsity of a proposition of fact, he must render his decision against the party having the burden of proof. Consequently, in a jury trial the judge by allocating the burden of proof decides each issue of fact which the jury is unable to decide." E. Morgan, *Some Problems of Proof Under the Anglo-American System of Litigation* 70–71 (1956). When the jury is uncertain on the issue of the truth or falsity of the statement, as it may have been in the present case, it must find in favor of the plaintiff. A presumption of falsity thus permits liability without fault in the close case, in the case in which the jury is uncertain. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 2224–30, 60 L.Ed.2d 777 (1979), a criminal presumption case discussing the significant effect that burden-

---

1. Damages may not be presumed unless plaintiff proves defendant had knowledge of the falsity of his statements or acted recklessly in disregard for the truth. *See Memphis Pub. Co., supra*, 569 S.W.2d at 419; *Gertz, supra*, 418 U.S. at 349, 94 S.Ct. at 3011. Thus, the negligence of the media must be the proximate cause of actual damages. It is indeed difficult to conceive of actual damages absent proof of falsehood.

shifting presumptions may have on the outcome of a close case and requiring a close causal connection between the proved fact and the presumed fact. In libel and slander cases generally, there is no particular causal connection between the proved fact (the making of a derogatory statement) and the presumed fact (the falsity of the statement). There is no particular reason to presume falsity.

 The Supreme Court has said that before the status quo is changed judicially in libel cases by an award of money damages against the publisher, the First Amendment requires that the plaintiff prove fault. Falsity is an element of fault under the First Amendment that should be proved and not presumed. The District Court therefore erred in placing the burden on the defendant. As a matter of federal First Amendment law, the burden must be placed on the plaintiff to show falsity.

## IV. EVIDENCE OF PRIOR LAWSUIT SHOULD HAVE BEEN ADMITTED

During trial defendant attempted to offer hearsay proof that others had accused plaintiff in lawsuits prior to the newscast of mistreating his cattle. Defendant offered the evidence to impeach the testimony of plaintiff's witness Gary Rose who testified that he was "somewhat surprised" by the accusation in the newscast and that he terminated an oral contract and canceled a planned business venture with Wilson because of the newscast. In fact, prior to the newscast Rose had been named as a defendant along with Wilson in a lawsuit that accused Wilson of mistreating cattle. *Mears v. Beaver Dam Plantation, Inc.*, No. 74–6730–S (N.D.Ala., filed July 23, 1974) (filed six months before newscast). *See also Jones v. Laird*, No. 74–111–S (N.D. Miss., filed Oct. 11, 1974); *Cantella v. Wil-*

son, No. 74–87–S (N.D.Miss., filed July 26, 1974).

 The proof of other lawsuits was relevant to impeachment of Rose. The District Court was correct that evidence of prior lawsuits in which other persons claimed that plaintiff mistreated his cattle is hearsay. It could not be used to prove that plaintiff actually mistreated his cattle as reported by defendant. The evidence could properly be used, however, to directly impeach Rose's claim of surprise and cancellation of a contract as a result of the televised accusations. *Cf. Julander v. Ford Motor Co.*, 488 F.2d 839, 845–46 (10th Cir. 1973). The probative value of the evidence of prior accusations of mistreatment, therefore, clearly outweighs any prejudicial effect from its admission. A limiting instruction should accompany the use of the evidence of the prior lawsuits in order to eliminate so far as possible the jury's use of the evidence for the truth of the matter asserted, *i. e.*, as evidence of actual mistreatment of cattle in the past.

 We cannot say, however, that the trial court erred when it excluded the evidence during the cross-examination of plaintiff. The existence of the prior lawsuits, unlike with Rose, did not directly impeach plaintiff's testimony. That the lawsuits had been filed does not tend to prove that plaintiff's standing in the community had been harmed unless there was also evidence that the lawsuits were known to the public. Weighing the factors of relevancy and prejudice, it was not an abuse of discretion for the trial court to exclude the evidence under Fed.R.Evid. 403.[2]

Accordingly, the judgment of the District Court is reversed and the case remanded for a new trial.

---

2. In light of our disposition, we need not decide plaintiff's claim that the District Court erred in

ordering a new trial unless he accepted a remittitur.