Garsh, J.
This is a defamation action in which the plaintiff, William Gilbert (“Gilbert”), seeks damages for slander and libel from the defendant, Ralph Bernard (“Bernard”). At the pretrial conference, the parties expressed disagreement as to whether the plaintiff bears the burden of proving the falsity of the allegedly defamatory statements or whether the defendant bears the burden of proving the truth of those statements. The plaintiff then sought a ruling that, since he is neither a public official nor a public figure, “he must only allege the falsity of the defamatory statements, and it is up to the defendant... to prove truth as an affirmative defense.”[1] For the reasons set forth below, the plaintiffs request for that ruling of law is denied.
BACKGROUND
At all relevant times, Gilbert has been employed as the Business Manager of the BristolPlymouth Regional School District, a public school district that operates a single school, the BristolPlymouth Regional Technical High School (the “School”). The Business Manager is subordinate to the SuperintendentDirector who, in turn, is subordinate to the School Committee. Bernard works for the School as an electrical instructor.
In the fall of 1990, Bernard stated, in conversation with the superintendent, that electrical supplies installed by him at Gilbert’s home were paid for by the School. He also stated that he believed that Gilbert was misusing school funds and that Gilbert had charged items for his personal use on school accounts. Bernard reiterated these oral statements in a letter to the School Board.
DISCUSSION
“[A]t least where a newspaper publishes speech of public concern, a privatefigure plaintiff cannot recover damages without also showing that the statements at issue are false.” Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 76869 (1986). The issue presented here is when, if ever, must a privatefigure plaintiff prove falsity in an action against a nonmedia defendant. This question is one that the Supreme Court noted it need not consider. Id. at 779 n.4; see also McAvoy v. Shufrin, 401 Mass. 593, 59798 n.4 (1988) (“We need not consider whether the Hepps holding applies here because altering the burden of proof would not change the result of this case . .. We note also that the trial judge instructed the jury that the plaintiff had the burden of proving falsity . . .”). Precedent, logic and the deep commitment of this Commonwealth and nation to protecting the free speech of all its citizens compel placing the burden of proving falsity upon Gilbert.
Before the common law of defamation became infused with, and/or controlled by, First Amendment principles, the standard was one of strict or absolute liability. Sweet v. Post Publishing Co., 215 Mass. 450, 45354 (1913) (newspaper liable for publishing inaccurate report of judicial proceedings despite its exercise of reasonable care and diligence and the fact inaccuracies resulted from “honest mistake”); Burt v. Advertiser Newspaper Co., 154 Mass. 238, 24445 (1891) *144 f“[I]t is not a justification that the defendant had reasonable cause to believe [the charges in an investigative report] to be true. A person publishes libellous matter at his peril.”). Truth was an absolute defense to slander and, in the absence of malice, a defense to libel. Cornerford v. Meier, 302 Mass. 398, 402 (1939).[2] At common law, the plaintiff bore only the burden of alleging the falsity of the alleged defamatory communication. It was up to the defendant to prove truth as an affirmative defense. Maloof v. Post Publishing Co., 306 Mass. 279, 280 (1940).
Beginning with New York Times v. Sullivan, 376 U.S. 254 (1964), the Supreme Court radically altered the common law landscape, introducing into the lingo of defamation law terms like “public official,” “public figure,” “actual malice,” and “matter of public concern." In New York Times v. Sullivan, the Court held that the federal constitution mandates that a public official may not recover damages for defamation without proof that the defendant acted with actual malice — knowledge of the falsity of the statement or reckless disregard for its truth or falsity. Id. at 279280. The alteration of common law continued in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974), where the Supreme Court held that “so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.” Id. at 347.
1. Stone v. Essex County Newspapers, Inc.
The Supreme Court’s holding in Gertz was an “apparently unprecedented modification ... of the civil common law of the States.”[3] Stone v. Essex County Newspapers, Inc. 367 Mass. 849, 85859 n.6 (1975). In response to, but not limited by, Gertz, the Supreme Judicial Court modified the common law of Massachusetts by holding, without any qualifications, that “private persons . . . may recover compensation on proof of negligent publication of a defamatory falsehood” and upon proof of actual compensatory damages. Id. at 858, 860 (emphasis in original). The Stone court did not hold that a private person may recover on proof of negligent publication of a “defamatory statement;” rather it required proof by the plaintiff of a “defamatory falsehood.” Id. at 858. Although the primary focus of the decision in Stone was the issue of fault, its holding was not so circumscribed. Stone expressly requires a plaintiff to prove negligence, publication of a defamatory falsehood and damages. Id.
Unlike Gertz, the holding in Stone applies regardless of whether the statements involve matters of public or private concern. See New England TractorTrailer v. Globe Newspaper Co., 395 Mass. 471, 477 n.4 (1985) (discussing uncertainly about whether Gertz applies only to matters of public concern and concluding that, under Massachusetts common law, a private plaintiff must prove negligence even with respect to purely private matters).[4] Moreover, although Stone involved a media defendant, unlike Gertz, the Stone court did not expressly limit its holding to media defendants, and it has not been so limited in its application. E.g., Dexter’s Hearthside Restaurant Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 220, rev. denied, 400 Mass. 1104 (1987) (applying Stone’s damages rule to wholesaler of alcoholic beverages); cf. Jackson Sales Co., Inc. v. Sindorf, 350 A.2d 688, 69596 (Md. 1976) (negligence standard applies, as a matter of state law, to defamation cases brought against media and nonmedia defendants); Gazette, Inc. v. Harris, 325 S.E.2d 713, 726 (Va.J, cert. denied, 472 U.S. 1032 (1985) (holding as a matter of state law, negligence standard applies to media and nonmedia defendants alike because “(i]t would indeed be bizarre to hold as a matter of tort law that individuals are liable without fault while the media is liable only upon a showing of negligence”).
Were it not for the dictum in McAvoy v. Shufain, 401 Mass. at 779, Stone would appear to have settled the present issue by allocating the burden of proof with respect to falsity (as well as proof of fault and damages) to the plaintiff. In addition to the express language used by Stone, construing the holding in that case to put the burden of proving falsity on the plaintiff makes sense because falsiiy and fault are inextricably intertwined. Hepps, 475 U.S. at 778 (“As a practical matter, . . . evidence offered by plaintiffs on the publisher’s fault in adequately investigating the truth of the published statements will generally encompass evidence of the falsity of the matters asserted”); Restatement (Second) ofTorts §613, comment j (1977) (meeting the requirement to prove negligence “has, as a practical matter, made it necessary for the plaintiff to allege and prove the falsity of the communication, and from a realistic standpoint, has placed the burden of proving falsity on the plaintiff’). Negligence, after all, is not an abstract concept. It cannot be proven in a vacuum. To establish fault, the plaintiff must prove that the defendant knew the statement was false or, in the exercise of reasonable care, should have known that the defamatory statement was false.[5]
2. First Amendment Protection for Matters of Public Concern
Even if Stone did not cast the burden of proving falsity upon all privatefigure plaintiffs, the First Amendment mandates no less where, as here, the allegedly defamatory statements concern matters of public concern.[6] The statements Bernard made directly address the qualifications of the business manager of a regional public school district. They point to the possible misuse of public funds. Every taxpayer in the affected communities has a vital interest in whether tax moneys might have been siphoned off for the purchase of personal supplies for a public employee’s private home. Bernard’s alleged defamatory statements raise issues that have an impact beyond the speaker, subject, and addressees. It is not *145 “speech solely in the individual interest of the speaker,” nor speech “solely motivated by the desire for profit.” Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 762 (1985). The speech at issue cannot be characterized as statements that need no “special protection to ensure that ‘debate on public issues [will] be uninhibited, robust, and wideopen.’ ” Id., quoting New York Times Co. v. Sullivan, 376 U.S. at 270 (alteration in original).[7]
Noting that the burden of proof is critical only when the evidence as to truth is ambiguous, the Supreme Court in Hepps reasoned that “where the scales are in such an uncertain balance, we believe that the Constitution requires us to tip them in favor of protecting true speech.” Hepps, 475 U.S. at 776. The Constitution requires this resolution “(t]o ensure that true speech on matters of public concern is not deterred . . . [and] to encourage debate on public issues.” Id. at 77677. “To do otherwise could only result in a deterrence of speech which the Constitution makes free.” Id. at 777, quoting Speiser v. Randall 357 U.S. 513, 526 (1958). This rationale applies with equal force to actions against media and nonmedia speakers.[8] See In re IBP Confidential Business Documents Litigation, 797 F.2d 632, 642 (8th Cir. 1986) (“The fact that cases such as New York Times and Gertz involved media defendants, while arguably relevant in identifying the particular first amendment freedom involved, is in our view irrelevant to the question of what level of constitutional protection that right is to receive”); Pearce v. E.F. Hutton Group. Inc., 664 F.Supp. 1490, 151112 (D.D.C. 1987).
The Supreme Court in Hepps reaffirmed that “]t]he First Amendment requires that we protect some falsehood in order to protect speech that matters.” Heses, supra, at 778, quoting Gertz, 418 U.S. at 341 (alteration in original). It would be a perversion of the First Amendment to hold that the only “speech that matters” is that uttered by the media. “(S]peech concerning public affairs is more than selfexpression; it is the essence of self-government.” Garrison v. Louisiana, 379 U.S. 64, 7475 (1964). The speech at issue here concerns the possible misuse of public funds by a public servant, albeit one who may not be a “public official." Clearly it is “speech that matters.” Relieving only media defendants of the burden of proving truth as an affirmative defense is “irreconcilable with the fundamental First Amendment principle that ‘[t]he inherent worth of . . . speech in terms of its capacity for informing the public does not depend upon the identity of the source, whether corporation, association, union, or individual.’ ” Hepps, 475 U.S. at 780 (Brennan, J., concurring), quoting Dun & Bradstreet, Inc. v. Greenmoss Builders. Inc., 472 U.S. 749, 781 (1985) (Brennan, J., dissenting). ‘Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned.” Garrison v. Louisiana, 379 U.S. at 74.
If the First Amendment rights of the media would be “chilled” by having to prove truth as an affirmative defense, exposing speakers to the expense of having to prove truth and to the peril of large damage awards where the facts are ambiguous would certainly chill nonmedia speakers’ rights to a greater extent. For the media to defend against defamation suits, and even pay large damage awards, is a cost of doing business, although an constitutionally unacceptable cost in many instances. It would stand the First Amendment on its head if the media’s rights were protected in order to foster discussion of public affairs, but individuals who are encouraged to debate the public issues reported in the media may be chilled, along with those individuals who, by speaking in the first instance, spark the media’s interest in reporting on the public issue. “From the abolitionists before the Civil War to the environmentalists of today, citizen campaigns have had an imprint on our history. The phenomenon of libel suits shows that citizens may have as much of a stake in the central meaning of the First Amendment as the press does. For the surge of libel suits that so alarmed the press in the 1980s hit private citizens as well, and was if anything more chilling to those who spoke out on public issues.” Anthony Lewis, Make No Law 21011 (Random House 1991).
The media is not omniscient; the media’s views on the important issues of the day, including its editorial judgment as to what subjects to cover, have no inherently greater worth than the views of any other speaker in society. Applying the plaintiffs argument, if Gilbert had named as defendants in this action: a local community newspaper that reported on Bernard’s allegations, an author of a lettertotheeditor purportedly confirming the allegations, a student who repeated the allegations as part of a Chat discussion over the Internet, and a reader of the local paper who had discussed with others the reported allegations in the context of what action, if any, the School Board should take,[9] Gilbert would have had to prove falsity to prevail against the newspaper, but would not have to prove falsity to prevail against the original source, the letterwriter, the Internet user,[10] or the reader. Yet we value the press not simply so that important issues can be debated by other members of the media. “[T]he press does not have a monopoly on either the First Amendment or the ability to enlighten.” First National Bank of Boston v. Belloti, 435 U.S. 765, 782 (1978). Without “breathing space” for private individuals to speak on matters of public concern, there invariably will be a reduction in material to be reported by the media and, in turn, the amount and breadth of debate on public issues will diminish. “First amendment protection should not depend on whether the criticism is in the form of speech by a private individual or publication by the institutional press. Indeed, the law should encourage the private individual to become involved in and express his or her views on the conduct of government affairs. Arguably, vigorous debate at the *146 local level is vastly more important in' shaping an individual’s ideas and opinions as to proper government conduct than is what that individual reads or hears from the national media. The bulk of government is conducted on the level where matters of public concern are decided by personal, individual exchanges.” Garcia v. Board of Education, 777 F.2d 1403, 1410 (10th Cir. 1985), cert. denied, 479 U.S. 814 (1986) (holding application of the actual malice standard is not dependent upon the identity of the speaker).
Nothing in the Hepps Court’s reasoning suggests that it was material that the legal issue before the Court arose in the context of a media defendant. In fact, most of the cases cited in Hepps in support of the Court’s holding that the First Amendment requires a change in the common law’s allocation of the burden of proof are “speech” cases that do not involve media defendants or even defamation. Hepps, 475 U.S. at 77778. E.g., Consolidated Edison Co. v. Public Service Comm’n, 447 U.S. 530, 540 (1980) (content-based restriction); First National Bank of Boston v. Bellotti, 435 U.S. 765, 786 (1978) (speakerbased restriction);[11] NAACP v. Button, 371 U.S. 415, 433 (1963); Speiser v. Randall, 357 U.S. 513 (1958) (unconstitutional to precondition receipt of tax benefits upon a taxpayer signing a loyalty oath). “Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth — whether administered by judges, juries, or administration officials — and especially one that puts the burden of proving truth on the speaker.” New York Times v. Sullivan, 376 U.S. at 271.
Requiring a plaintiff to show falsity, whoever the speaker may be, where the speech relates to matters of public concern is consistent with the application of the First Amendment in other areas of defamation law.[12] For example, the Supreme Court has applied the requirement that public officials seeking damages for defamatory falsehoods relating to official conduct prove knowledge of falsity or reckless disregard for the truth to media and nonmedia critics alike.[13] Indeed, Sullivan sued not only the New York Times Company, but also four Alabama ministers. New York Times Co., 376 U.S. at 256. The holding applies to all the defendants. The Court stated: “We hold today that the Constitution delimits a State’s power to award damages for libel in actions brought by public officials against critics of their official conduct.” Id. at 283. The holding is not predicated simply upon the Press Clause of the First Amendment, nor does it identify a particular category of “critics,” namely the media. See also Garrison v. Louisiana, 379 U.S. at 7778 (applying, without discussion, actual malice standard to criminal defamation action against nonmedia critic); Pickering v. Board of Education, 391 U.S. 563, 573 (1968) (applying New York Times standard to nonmedia defendant).[14] The same First Amendment interests of “freedom of expression upon public questions” and “that debate on public issues should be uninhibited, robust, and wideopen,” New York Times, 376 U.S. at 269, 270, are at stake here.
In the area of damages, the Supreme Court also declined to establish different standards for media and nonmedia defendants. Dun & Bradstreet involved the review of an award of presumed and punitive damages in an action involving a privatefigure plaintiff and speech of purely private concern; the plaintiff had not been required to prove actual malice. The Vermont Supreme Court held that the First Amendment’s prohibition of “presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth,” Gertz, 418 U.S. at 349, did not apply to a private individual’s claims against a nonmedia defendant. The United States Supreme Court affirmed the judgment, but on veiy different grounds. The Court held that “permitting recovery of presumed and punitive damages in defamation cases absent a showing of ‘actual malice’ does not violate the First Amendment when the defamatory statements do not involve matters of public concern.” Dun & Bradstreet, 472 U.S. at 763. As in Hepps, the Court focused upon the nature of the speech rather than the identity of the speaker. While the members of the Supreme Court disagreed among themselves (there were four opinions), not one of the justices espoused the distinction drawn by the Vermont Supreme Court between media and nonmedia defendants.[15]
3. Massachusetts Common Law and Article 16
Finally, even if the Supreme Court of the United States were to sanction state defamation law principles that require defendants to prove truth on matters of public concern, this Commonwealth would not retreat from Madison’s view that the citizens’ freedom to criticize government is the essence of the First Amendment.[16] For the reasons set forth in Lyons v. Globe Newspaper Co., 415 Mass. 258, 26869 (1993), “the independent protections of freedom of speech which are found in our common law and in art. 16 would lead us to reach the same result even if there existed no Federal constitutional support for the” principle that, in matters of public concern, the plaintiff must bear the burden of proving truth. In Lyons, the Supreme Judicial Court held that it would not reduce the scope of protection accorded to opinions, even if permitted to do so under the federal constitution. Cf. New England Tractor Trailer v. Globe Newspaper Co., 395 Mass. at 477 & n.4 (declining to follow the plurality’s opinion in Dun & Bradstreet indicating Gertz’s negligence rule need not apply to private parties alleging defamation on a matter of purely private concern).
In sum, having concluded that the speech here involves matters of public concern, Gilbert must prove that Bernard’s statements about him were, in fact, false.
*147 ORDER
It is hereby ORDERED that the plaintiffs request for a ruling that the defendant must prove the truth of the allegedly defamatory statements be DENIED.

The parties also disagree as to plaintiffs status as a public official. Gilbert seeks a ruling of law that he is not a “public official.” Where the facts bearing on the plaintiffs status are uncontested, whether the plaintiff is a public official is a question of law to be determined by the court. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 86263 (1975). Not every individual who is a government employee is a public official. Id. at 858. Although Gilbert now contends that it is important to resolve this legal issue before trial commences, he never moved for partial summary judgment. No affidavits have been filed. The scope of Gilbert’s duties as business manager, the degree to which he was involved, if at all, in formulating policy, the discretion he exercises, the opportunity he has to abuse the public trust, the extent to which he is authorized to act for the government, and other relevant facts have not been established. Accordingly, the court declines, at this time, to act upon Gilbert’s first request for ruling.

This common law rule was codified in Massachusetts in 1855, in the predecessor to M.G.L.c. 231, §92, which provides: “The defendant in an action for writing or for publishing a libel may introduce in evidence the truth of the matter contained in the publication charged as libellous; and the truth shall be a justification unless actual malice is proved.” Under Massachusetts law, therefore, where a defendant acted with actual malice, truth was not a defense and a defendant was held strictly liable. For the purposes of c.231, §92, actual malice does not have the meaning ascribed by the Supreme Court in New York Times; proof of malevolent intent or motive suffices. Fay v. Harrington, 176 Mass. 270, 274 (1900).

Gertz rendered M.G.L.c. 231, §92 unconstitutional because that statute permits recoveiy in the absence of any falsehood if the statement at issue is defamatory and the defendant acted malevolently. See also Garrison v. Louisiana, 379 U.S. 64, 71 n.7, 7778 (1964).

“Private truth is as valuable as public truth; for most of us the private facts of our family lives, workplaces, schools, churches and neighborhoods are as vital as the more public facts of politics, art, and science." Rodney Smolla, Law of Defamation §5.07 at 515 (1994).

“Faimess and coherent consideration of the issue lead us to the conclusion that the party with the burden of proving carelessness must also cariy the burden of proving falsity as a part of the concept of fault.” Wilson v. ScrippsHoward Broadcasting Co., 642 F.2d 371, 375 (6th Cir. 1981); see also General Motors Corp. v. Piskor, 352 A.2d 810, 815 (Md. 1976) (applying state law negligence principles, “[t]ruth is no longer an affirmative defense; instead the burden of proving falsity rests upon the plaintiff”).

The fact that Bernard’s statements may be conditionally privileged does not, by itself, require, as a matter of common law, the plaintiff to prove falsity. If a defendant proves that a privilege applies, the plaintiff has the burden of proving that the defendant has lost the privilege by proving knowledge of falsity or reckless disregard for truth, commonlaw malice, or excessive publication. Ezekiel v. Jones Motor Co., Inc., 374 Mass. 382, 393 (1978); Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 34344 (1943).

Because I find that the speech deals with a matter of public concern, Ramirez v. Roberts, 540 A.2d 475 (Me. 1988), upon which the plaintiff relies, is inapposite. That case held that the common law defamation rules apply to a nonmedia defendant who defamed a private plaintiff on a purely private matter. Id. at 477. Contra Sigal Construction Corp. v. Stanbury, 586 A.2d 1204, 1209 n.5 (D.C. App. 1991) (indicating private plaintiff bears burden to prove falsity against nonmedia defendant in private matter).

See generally Rodney Smolla, Law of Defamation §5.07; Anne Benroya, Note, Philadelphia Newspapers v. Hepps Revisted: A Critical Approach to Different Standards of Protection for Media and Nonmedia Defendants in Private Plaintiff Defamation Cases, 58 Geo.Wash.L.Rev. 1268 (1990); Linda Kalm, Note, The Burden of Proving Truth or Falsity in Defamation: Setting a Startdardfor Cases Involving Nonmedia Defendants, 62 N.Y.U. L. Rev. 812 (1987).

The mere fact that a reader may have been repeating allegations contained in a newspaper article would not insulate her from liability. Restatement (Second) of Torts §578 (1977).

The phenomenon of on-line Chat groups exacerbates the problem of identifying and defining a media defendant. “(T]he officials undertaking that task would be required to distinguish the protected from the unprotected on the basis of such variables as content of expression, frequency or fervor of expression, or ownership of the technological means of dissemination. Yet, nothing in this Court’s opinions supports such a confining approach to the scope of Press Clause protection.” First National Bank of Boston v. Bellotti, 435 U.S. at 801 (Burger, J., concurring). “First Amendment difficulties lurk in the definitional questions such an approach would generate." Dun & Bradstreet, 472 U.S. at 782 (Brennan, J., dissenting).

In Dun & Bradstreet the Supreme Court similarly relied upon First National Bank of Boston v. Bellotti in support of the following statement: “We have long recognized that not all speech is of equal First Amendment importance. It is speech on ‘matters of public concern’ that is ‘at the heart of the First Amendment’s protection.’ ” Dun & Bradstreet, 472 U.S. at 75859, quoting First NationdLBank of Boston, 435 U.S. at 776.

In other areas of law, as well, the distinction between media and nonmedia defendant has been held not to be constitutionally significant. E.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 60305 (1982) (press and public have presumptive right of access to criminal court proceedings); Pell v. Procunier, 417 U.S. 817, 83435 (1974) (press has no greater right of access to prisons under the First Amendment than do members of the public).

Inherent in the fault standard adopted in New York Times is the requirement that a public official or public figure prove the falsity of the statements at issue as part of the prima facie case. Hepps, 475 U.S. at 775; Garrison, 379 U.S. at 74.

See also Turner v. Devlin, 848 P.2d 286, 290 n.8 (Ariz. 1993) (requiring public official to demonstrate statements by a nonmedia defendant were probably false); Casso v. Brand, 776 S.W.2d 551, 554 (Tex. 1989) and cases cited therein (requiring public official to prove nonmedia defendant acted with actual malice); McNulty v. Kessler, 3 Mass. L. Rptr. No. 17, 457, 466 (1995) (McHugh, J.) (“The constitutional privilege established in New York Times is not simply a privilege designed to protect the media’s right to publish. Indeed, the media has no greater rights under the constitution than the ordinary citizen.").

The judgment of the Court was announced by Justice Powell, who delivered an opinion in which Justices Rehnquist and O’Connor joined. That opinion declined to rest the judgment on a distinction between media and nonmedia defendants, as the Vermont Supreme Court had. Five justices explicitly agreed that the rights of the media in the context of defamation law are no greater than those enjoyed by other speakers. Dun & Bradstreet, ATI U.S. at 773 (White, J., concurring); id, at 781 (Brennan, J., dissenting). Justice White, in his concurring opinion, stated:
Wisely, in my view, Justice Powell does not rest his application of a different rule here on distinction drawn between *148 media and nonmedia defendants. On that issue, I agree with Justice Brennan that the First Amendment gives no more protection to the press in defamation suits than it does to others exercising their freedom of speech. None of our cases affords such a distinction; to the contrary, the Court has rejected it at every turn. It should be rejected again, particularly in this context, since it makes no sense to give the most protection to those publishers who reach the most readers and therefore pollute the channels of communication with the most misinformation and do the most damage to private reputation.
Id. at 773 (note omitted). Chief Justice Burger implicitly agreed because he stated, in his concurring opinion, that he “agreed generally with Justice White’s observations concerning New YorkTimes v. Sullivan.'’-Id. at 764. Justice Brennan’s dissent, joined by Justices Marshall, Blackmun and Stevens, also eschewed the media/nonmedia distinction:
Such a distinction is irreconcilable with . . . fundamental First Amendment principiéis] . . . We protect the press to ensure the vitality of First Amendment guarantees. This solicitude implies no endorsement of the principle that speakers other than the press deserve lesser First Amendment protection . . . The free speech guarantee gives each citizen an equal right to selfexpression and to participation in selfgovernment. This guarantee also protects the rights of listeners to ‘the widest possible dissemination of information.’
Id. at 78182 (notes and citations omitted).

“The right of free public discussion of the stewardship of public officials was ... in Madison’s view, a fundamental principle of the American form of government.” New York Times, 376 U.S. at 275.